**ULWELLING | SIDDIQUI LLP**
Omar A. Siddiqui, Esq. (Bar No. 213581)
Daniel M. Josephson, Esq. (Bar No. 245895)
Brittany A. Ortiz, Esq. (Bar No. 305775)
695 Town Center Drive, Ste. 700
Costa Mesa, California 92626
Telephone:   (714) 384-6650
Facsimile:   (714) 384-6651
osiddiqui@usllp.com
djosephson@usllp.com
bortiz@usllp.com

Attorneys for Plaintiff,
**GREEN CRUSH, LLC**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA -- SOUTHERN DIVISION

| | |
|---|---|
| GREEN CRUSH, LLC, a California Limited Liability Company,<br><br>              Plaintiff,<br><br>       vs.<br><br>PARADISE SPLASH I, INC., a California corporation;<br>ADRIAN DURAN, an individual;<br>JOHN C. ROZENBERG, an individual;<br>SCANNING L.A., INC., a California corporation;<br>CLAUDIO MILEO, an individual; and DOES 1 through 10, inclusive,<br><br>              Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**(1) TRADEMARK INFRINGEMENT [TRADE DRESS - 15 USC § 1121, et seq.];**<br>**(2) FALSE DESIGNATION OF ORIGIN [15 USC § 1125(a)];**<br>**(3) UNFAIR COMPETITION UNDER LANHAM ACT [15 USC 1125(a), et seq.];**<br>**(4) COMMON LAW TRADEMARK INFRINGEMENT;**<br>**(5) UNFAIR BUSINESS PRACTICES [CA BUS. & PROF. CODE § 17200];**<br>**(6) BREACH OF CONTRACT (COUNT I);**<br>**(7) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT I);**<br>**(8) BREACH OF CONTRACT (COUNT II);**<br>**(9) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT** |

1

**COMPLAINT**

II);
(10) **MISAPPROPRIATION OF TRADE SECRETS;**
(11) **TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS;**
(12) **TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**
(13) **UNJUST ENRICHMENT;**
(14) **CIVIL CONSPIRACY;**
(15) **AN ACCOUNTING;** and
(16) **DECLARATORY RELIEF**

**[DEMAND FOR JURY TRIAL]**

FOR ITS CLAIMS against Defendants PARADISE SPLASH I, INC., a California corporation ("SPLASH"), ADRIAN DURAN, an individual ("DURAN"); JOHN C. ROZENBERG, an individual ("ROZENBERG"), SCANNING L.A. INC., a California corporation ("SCANNING"); CLAUDIO MILEO, an individual ("MILEO"); and DOES 1 through 10, inclusive (collectively "Defendants"), Plaintiff GREEN CRUSH, LLC, a California Limited Liability Company ("GREEN CRUSH" or "Plaintiff") alleges as follows:

## NATURE OF THE DISPUTE

1.      GREEN CRUSH has expended substantial time, money and resources in order to develop, promote and maintain its distinctive trademarks, trade dress, and proprietary trade secrets.

2.      GREEN CRUSH established the business and owns the trademark "Green Crush" as it relates to fast-food restaurant services.

3.      Defendants' conduct, which includes, *inter alia*, the willful theft and use for their own benefit of proprietary and confidential information and the intentional

2

**COMPLAINT**

infringement of protected trade dress and trade secrets constitutes a violation of federal law, as well as a material breach of contract for GREEN CRUSH's former employee defendants and contravenes California statutes designed to protect Plaintiffs such as GREEN CRUSH from unfair business practices.

## JURISDICTION AND VENUE

4.     This Court has original jurisdiction over this action under 15 U.S.C. §§ 1121, 1125, 28 U.S.C. § 1338, and 28 U.S.C. § 1331 in that this Complaint raises federal questions under the United States Trademark Act (Lanham Act), 15 U.S.C. § 1051 et seq. The Court has supplemental and/or pendent jurisdiction over the non-federal law claims pursuant to 28 U.S.C. § 1367.

5.     The matter in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

6.     The Court has personal jurisdiction over Defendants because Defendants have engaged in business activities in, and directed to, the State of California and have committed tortious acts within the state. The individual defendants are residents of the State of California and the corporate defendant is registered in the State of California as a California corporation, and it has purposefully availed itself of the opportunity to conduct commercial activities in this forum, and this Complaint arises out of those activities.

7.     Venue is proper in this district under 28 U.S.C. § 1391 (b) and (c), in that a substantial injury occurred, and continues to occur in this district, a substantial number of the events on which the claims in this Complaint are based took place in this district, and Defendants are subject to personal jurisdiction in this district.

## PARTIES

8.     Plaintiff GREEN CRUSH is, and at all times mentioned herein was and is, a California limited liability company, qualified to do business in California and

1  doing business in California and elsewhere within the United States.

2      9.    Plaintiff is informed and believes that Defendant SPLASH at all times

3  mentioned herein was and is, a California corporation, qualified to do business in

4  California and doing business in California and elsewhere within the United States.

5  On information and belief, MILEO and ROZENBERG are the shareholders, owners,

6  officers, directors, investors, and/or operators of SPLASH.

7      10.   Plaintiff is informed and believes that Defendant DURAN, an

8  individual, is also a resident of the State of California.

9      11.   Plaintiff is informed and believes that Defendant ROZENBERG, an

10  individual, is a resident of the State of California and Arizona.

11     12.   Plaintiff is informed and believes that Defendant SCANNING at all

12  times mentioned herein was and is, a California corporation, qualified to do business

13  in California and doing business in California and elsewhere within the United

14  States. On information and belief, MILEO is also a shareholder, owner, officer,

15  director, investor, and/or operator of SCANNING.

16     13.   Plaintiff is informed and believes that Defendant MILEO, an individual,

17  is a resident of the State of California.

18     14.   At all times relevant to the events referred to in this action, Defendants

19  SPLASH, DURAN, ROZENBERG, SCANNING, MILEO and DOES 1 through 10,

20  inclusive, were agents or principals of one another. In performing or engaging in the

21  conduct described herein, each entity was acting within the course and scope of its

22  respective agency-principal relationships.  Plaintiff is informed and believes that all

23  of the relevant conduct by Defendants was ratified and approved by the other

24  Defendants.

25     15.   Plaintiff is ignorant of the true names and capacities of Defendants,

26  whether individual, corporate, associate or otherwise, sued herein as DOES 1 through

27  10, inclusive, and therefore sue these Defendants by such fictitious names.  Plaintiff

28  will amend this Complaint to allege their true names when ascertained.  Plaintiff is

**COMPLAINT**

informed and believes that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged.

## **ALTER EGO ALLEGATIONS**

16.   Plaintiff is informed and believes, and based upon such information and belief, allege that, at all times herein mentioned, Defendants ROZENBERG, MILEO, and SPLASH and Does 6 to 10, inclusive, are really the alter ego of the other, and each is operated, controlled and maintained by the other, so that any separateness of identity ceases to exist and each acted with the permission and consent of the other.

17.   Plaintiff is informed and believes, and based upon such information and belief, allege that, at all times herein mentioned, Defendant SPLASH holds itself out as a corporation.

18.   Plaintiff is informed and believes, and based upon such information and belief, alleges that, at all times herein mentioned, there existed such a unity of interest and ownership between Defendants ROZENBERG, MILEO, and SPLASH that, if a separate existence of them is recognized, an inequitable result would follow.

19.   Plaintiff is informed and believes, and based upon such information and belief, alleges that, at all times herein mentioned, Defendants ROZENBERG, MILEO, and SPLASH have commingled corporate funds and other assets with personal funds and other assets for ROZENBERG's own convenience and to assist in evading the payment of obligations.

20.   Plaintiff is informed and believes, and based upon such information and belief, alleges that, at all times herein mentioned, Defendants ROZENBERG and MILEO have treated the assets of Defendant SPLASH as if they were his own.

21.   Plaintiff is informed and believes, and based upon such information and belief, alleges that, at all times herein mentioned, Defendant SPLASH was not adequately capitalized for the business purposes for which it was formed, if it was

**COMPLAINT**

formed for any legitimate business purpose at all.

22.    Plaintiff is informed and believes, and based upon such information and belief, alleges that, at all times herein mentioned, Defendants ROZENBERG and MILEO used the SPLASH corporate entity to procure labor, services, or merchandise for himself, as an individual.

23.    Plaintiff is informed and believes, and based upon such information and belief, alleges that, at all times herein mentioned, Defendants ROZENBERG and MILEO used the SPLASH corporate entity as a mere shell, instrumentality, or conduit for his own illegal activities as alleged in this complaint, and although Defendants ROZENBERG and MILEO and Defendant SPLASH purport to be distinct entities, there is but one enterprise, and this enterprise has been so handled that it should be liable, as a whole, for the obligations of its component entities.

24.    Plaintiff is informed and believes, and based upon such information and belief, alleges that, at all times herein mentioned, Defendants ROZENBERG and MILEO have failed to maintain corporate formalities with respect to SPLASH.

25.    Plaintiff is informed and believes, and based upon such information and belief, alleges that, at all times herein mentioned, Defendants ROZENBERG and MILEO and Defendant SPLASH use the same work space and/or business location(s) and engage the same professionals.

26.    On information and belief, the separate acts and omissions of each of the Defendants, as set forth herein, were done intentionally and pursuant to a common plan and design to injure Plaintiff.  As a result of this civil conspiracy, each of the Defendants should be held separately liable and responsible for the entirety of Plaintiff's damages.

## **FACTUAL BACKGROUND**

27.    Plaintiff GREEN CRUSH is the owner of Green Crush stores, a juice bar and smoothie purveyor operating chiefly from shopping mall locations in the

**COMPLAINT**

Southern California and Las Vegas areas. GREEN CRUSH owns and operates under the "GREEN CRUSH®" trademark and has been in operation for nearly five years. It chose the GREEN CRUSH® mark based on a fanciful term it created to brand its juice and smoothie bars and *aguas frescas* beverage products. The "GREEN CRUSH®" trademark is prominently featured on and in GREEN CRUSH's store signage, advertising, marketing materials, products, beverage containers, and website (www.greencrush.com) in addition to other locations. GREEN CRUSH began using the term "GREEN CRUSH®" in commerce to refer to itself and its products as early as June 30, 2012.

28.    In or about the summer of 2012, at the Montebello Mall in Southern California, GREEN CRUSH opened its first doors for business as a creator and seller of fresh mixed fruit/vegetable *aguas frescas* juices and smoothies, offering such beverages to its customers in its retail stores. GREEN CRUSH then opened additional stores in the Tyler Mall in Southern California in 2013, and Cerritos Mall in Southern California in 2014. Additional Southern California locations in Ventura and Glendale were opened in 2015 and in Las Vegas in 2016.

29.    The success of GREEN CRUSH has come from its unique products and recipes of fresh quality fruit and vegetable juices. GREEN CRUSH's mission is to introduce an innovative approach by offering *aguas frescas* beverages. GREEN CRUSH generates extensive sales in Southern California and Nevada, and maintains a strong connection with its customers.

30.    GREEN CRUSH expended considerable sums of money and invested substantial time, energy, and resources in developing a business plan to use the GREEN CRUSH® trademarks, logos, and terms derivative therefrom, as a brand. GREEN CRUSH has made significant investments and preparations with respect to its GREEN CRUSH® trademark, trade dress, trade secrets, and the products such mark represents, including but not limited to: research and development of its

7

**COMPLAINT**

beverages and products; developing a marketing, publicity and distribution plan for its consumers; researching and exploring franchise opportunities, and investing significant sums in its juice and smoothie bars throughout Southern California.

31.     Plaintiff is informed and believes that, in or about 2016, Defendants ROZENBERG, EMILEO, and SPLASH opened a competing business – a nearly identical juice smoothie bar and healthy beverage products business – at the Arizona Mills Mall in Tempe, Arizona, with apparent plans to develop other similar locations elsewhere in the United States.

32.     Not only was the overall look and feel – the trade dress – of SPLASH a nearly identical copy of the trade dress of GREEN CRUSH's stores, but many employees of SPLASH were poached from GREEN CRUSH's stores. At least one of these employees – Defendant DURAN – had special access to GREEN CRUSH's proprietary and confidential operating information and used such access for SPLASH's corporate espionage.

33.     Defendant DURAN was hired by GREEN CRUSH on or about October 13, 2014, trained for approximately four weeks at GREEN CRUSH's Tyler Mall location, and was then assigned to GREEN CRUSH's Cerritos Mall location as its Store Manager. There, Defendant DURAN's duties included understanding and coordinating the roles of servers, cashiers, juicers, picantes, and customer service. As Store Manager, Defendant DURAN had nearly unfettered access to proprietary and confidential company information of GREEN CRUSH, including its propriety trade recipes and trade secrets. In addition, DURAN was frequently contacted by individuals interesting in possible franchising opportunities with GREEN CRUSH.

34.     Plaintiff is informed and believes that, despite executing a Non-Disclosure Agreement, DURAN used the proprietary and confidential operating information of GREEN CRUSH for the benefit of Defendants, without GREEN CRUSH's knowledge or authorization.

**COMPLAINT**

35.    Plaintiff is informed and believes that DURAN's plan to steal and utilize for his own benefit the proprietary and confidential information of GREEN CRUSH began even *before* he was hired by GREEN CRUSH. Defendant DURAN accepted the position of Store Manager with GREEN CRUSH in order to put himself in a position in which he would necessarily have access to sensitive proprietary and confidential company information.

36.    For example, DURAN repeatedly asked certain other senior GREEN CRUSH employees about the operations of the GREEN CRUSH Distribution Center. He made multiple inquiries with such employees regarding the specific equipment, the detailed drink ingredients, the design, placement, setting, and layout of drink containers and cups, how they were created and displayed at the GREEN CRUSH stores and the process and recipes obtained and used by GREEN CRUSH in its stores.

37.    In addition, Plaintiff is informed and believes that Defendant DURAN even granted personal access (using his manager's key) to at least one GREEN CRUSH store after normal working hours to SPLASH owners/ investors,  Defendants ROZENBERG and MILEO, for the purpose of copying GREEN CRUSH's business plans, models and related confidential and proprietary information and trade secrets.

38.    Plaintiff is informed and believes that Defendant DURAN, in conjunction with Defendants MILEO and SCANNING, pursuant to a common plan, also improperly manipulated GREEN CRUSH's Point-of-Sale ("POS") System while employed at GREEN CRUSH. Plaintiff is informed and believes that Defendants ROZENBERG, MILEO and DURAN improperly copied and utilized *most*, if not nearly all, of GREEN CRUSH's POS's proprietary code, look and feel without consent.

39.    Defendant L.A. SCANNING, through its President, Defendant CLAUDIO MILEO, was first engaged as a POS System technology contractor by GREEN CRUSH in or about December 2014. As part of their engagement,

9

**COMPLAINT**

SCANNING and MILEO agreed not to divulge or disclose trade secrets, including but not limited to the POS System technology, of GREEN CRUSH to any third party as part of their understanding of the terms of agreement and engagement with GREEN CRUSH.

40.     However, in breach of their agreement with GREEN CRUSH, Defendants SCANNING, MILEO, DURAN, SPLASH and ROZENBERG copied nearly all of the GREEN CRUSH back office protocols, trade secrets and procedures embodied in the POS System and elsewhere, copied the complete trade dress and design (the "look and feel") of GREEN CRUSH's stores and copied the business model GREEN CRUSH invested so much time and money to develop.

41.     In fact, a number of GREEN CRUSH's employees were specifically poached and solicited to work for SPLASH in its Arizona store by Defendants at the time of the SPLASH store's construction. Upon seeing the proposed SPLASH store for the first time, some of these prospective SPLASH (and former GREEN CRUSH) employees asked if the store under construction was a GREEN CRUSH store because it looked just like one.

42.     Defendants opened their infringing SPLASH store in Arizona for business on or about November 22, 2016.

43.     Defendants have thus used, and continue to use, the valuable intellectual property – including without limitation, the distinctive trade dress of GREEN CRUSH – to establish, build, develop, advertise and market a business substantially similar to that of GREEN CRUSH, an *aguas frescas*/fresh juice business.

## THE TRADEMARK

44.     On or about July 9, 2012, GREEN CRUSH filed its use-based application to register GREEN CRUSH® with the United States Patent Trademark Office ("USPTO"). The application was granted.

45.   On or about May 7, 2013, the USPTO duly and legally issued U.S. Trademark Registration (Number 4,330,917) of the "GREEN CRUSH®" mark to Plaintiff GREEN CRUSH as it relates to fast-food restaurant services [International Class: 43]. On or about June 9, 2015, the USPTO duly registered a Green Crush logo trademark consisting of the letter "C" in stylized pink lettering with droplets and green leaves, U.S. Trademark Registration Number 4,752,862, as it relates to fast-food restaurant services [International Class 43]. On or about February 28, 2014, GREEN CRUSH filed a subsequent Trademark Application, for a logo design mark for GREEN CRUSH®, U.S. Trademark Application Serial Number 86,208,025, currently pending before the USPTO. True and correct copies of the United States Trademark Certificates of Registration are attached hereto as **Exhibit "A"** and incorporated herein as if set out in full by this reference.

46.   Plaintiff brings this action seeking, *inter alia*, damages for trademark infringement, breach of contract and unjust enrichment.

## **FIRST CLAIM FOR RELIEF**
### **TRADEMARK INFRINGEMENT / TRADE DRESS**
### **(Under Lanham Act 15 U.S.C. § 1125(a)(1))**
### **(Against All Defendants)**

47.   Plaintiff realleges and incorporates by this reference paragraphs 1 through 46, inclusive, of this Complaint as if fully set forth herein.

48.   GREEN CRUSH is a widely-recognized maker and provider of fresh quality fruit and vegetable juices, including without limitation, agua frescas, sold through various shopping centers and malls in California and Nevada. Since approximately 2012, GREEN CRUSH has grown to become a leader in the juice bar arena. GREEN CRUSH prides itself on its reputation for high-quality, reliable beverages.

**COMPLAINT**

49.   GREEN CRUSH has earned an industry-wide reputation for its high quality beverages and distinctive juice bar look.

50.   GREEN CRUSH has expended considerable sums of money and invested substantial time, energy, and resources in developing a business plan to use the GREEN CRUSH® trademarks, logos, and terms derivative therefrom, as a brand. GREEN CRUSH has made significant investments and preparations with respect to its GREEN CRUSH® trademark, trade dress, trade secrets, and the products such mark represents, including but not limited to: research and development of its beverages and products; developing a marketing, publicity and distribution plan for its consumers; researching and exploring franchise opportunities, and investing significant sums in its juice and smoothie bars throughout Southern California and Nevada.

51.   Plaintiff uses the name, trademark and design mark "GREEN CRUSH®" (as well as its distinctive trade dress) in connection with the sale, distribution, installation, advertising, marketing, and promotion of its wide variety of beverages.

52.   Plaintiff's GREEN CRUSH® intellectual property, trade dress, and brand identity have substantial image recognition. The product offerings of Plaintiff GREEN CRUSH have been in magazines and newspapers and on television and Internet websites.

53.   The name and trade dress of GREEN CRUSH® are the most important and easily recognized identifiers of the high quality goods the company offers. There is a particularly close association among consumers between GREEN CRUSH® the business, GREEN CRUSH® the mark, the distinctive trade dress of GREEN CRUSH® and the quality of the goods offered under the GREEN CRUSH® designation. For consumers, customers, vendors, and clients, GREEN CRUSH® has come to mean the highest quality.

54.   On or about May 7, 2013, the USPTO duly and legally issued U.S.

12

**COMPLAINT**

Trademark Registration (Number 4,330,917) of the "GREEN CRUSH®" mark to Plaintiff GREEN CRUSH as it relates to fast-food restaurant services [International Class: 43]. On or about June 9, 2015, the USPTO duly registered a Green Crush logo trademark consisting of the letter "C" in stylized pink lettering with droplets and green leaves, U.S. Trademark Registration Number 4,752,862, as it relates to fast-food restaurant services [International Class 43]. On or about February 28, 2014, GREEN CRUSH filed a subsequent Trademark Application, for a logo design mark for GREEN CRUSH®, U.S. Trademark Application Serial Number 86,208,025, currently pending before the USPTO.

55. At all times relevant herein, Plaintiff has been, and still is, the owner of the exclusive rights, title, and interest under the respective trade dress and trademarks in GREEN CRUSH® for fast-food restaurant goods and services. Plaintiff also has been, and still is, the owner of the exclusive rights, title and interest in the look and feel of its stores, product offerings, marketing materials, recipes and related matters as trade dress. Plaintiff also has exclusive rights to bring suit to enforce trademark protection, including the right to recover for past infringement of its GREEN CRUSH® marks.

56. The look and feel of GREEN CRUSH's stores, product offerings, marketing materials, recipes and related matter is highly distinctive and entitled to trade dress protection.

57. The look and feel of GREEN CRUSH's stores, product offerings, marketing materials, recipes and related matter is non-functional and thus entitled to trade dress protection.

58. On information and belief, there are no similar marks or similar trade dress in common commercial use relating to fast-food restaurant goods and services.

59. Defendants used GREEN CRUSH's trade dress substantially similar to the look and feel of GREEN CRUSH's stores, product offerings, marketing materials,

**COMPLAINT**

1  recipes and related matters without the consent of GREEN CRUSH, in a manner that

2  is likely to cause confusion among ordinary consumers as to the source, sponsorship,

3  affiliation, or approval of the respective parties' goods. Such use constitutes trade

4  dress and trademark infringement pursuant to 15 U.S.C. § 1114, et seq.

5       60.    Defendants' intentional and willful infringement of the GREEN

6  CRUSH® registered trademarks has caused, and will continue to cause, damage to

7  Plaintiff, and is causing irreparable harm to Plaintiff for which there is no adequate

8  remedy at law.

9       61.    Defendants are directly, contributorily or vicariously liability for these

10  actions.

11       WHEREFORE, Plaintiff prays for judgment as set forth more fully below.

12

13

14  **SECOND CLAIM FOR RELIEF**

15  **FALSE DESIGNATION OF ORIGIN**

16  **(Under Lanham Act 15 U.S.C. §1125(a), et seq.)**

17  **(Against All Defendants)**

18       62.    Plaintiff realleges and incorporates by this reference paragraphs 1

19  through 61, inclusive, of this Complaint as if fully set forth herein.

20       63.    Defendants knowingly and willfully used, in connection with their

21  services and products, a false or misleading designation of origin and a false or

22  misleading description and representation as to their goods and services, including

23  trade dress tending falsely to describe or represent to the public that their services

24  were related to those similar goods provided by Plaintiff.

25       64.    Defendants' acts were done with knowledge of the falsity of such

26  designation of origin, description and representation or the fact that such designation,

27  description and representation was misleading.

28       65.    Defendants have used and, on information and belief, continue to use the

14
**COMPLAINT**

distinctive GREEN CRUSH® trade dress in connection with goods and/or services, in commerce, in a manner that is likely to cause confusion, mistake, or deception as to the origin, sponsorship, affiliation, association or approval of their goods and/or services.

66.    Defendants' intentional and willful infringement of the GREEN CRUSH® trade dress has caused and will continue to cause damage to Plaintiff, and is causing irreparable harm to Plaintiff for which there is no adequate remedy at law.

67.    Plaintiff has been damaged by these acts in an amount to be proved at trial.  Plaintiff is also entitled under the Lanham Act to injunctive and equitable relief against Defendants.

68.    Defendants are directly, contributorily, or vicariously liable for these actions.

WHEREFORE, Plaintiff prays for judgment as set forth more fully below.

### THIRD CLAIM FOR RELIEF
### UNFAIR COMPETITION
### (Under Lanham Act 15 U.S.C. §1125(a), et seq.)
### (Against All Defendants)

69.    Plaintiff realleges and incorporates by this reference paragraphs 1 through 68, inclusive, of this Complaint as if fully set forth herein.

70.    Defendants' use of the GREEN CRUSH® trade dress to promote, market, or sell their products and/or offer services which are substantially similar to Plaintiff's goods and/or services, constitutes Unfair Competition pursuant to 15 U.S.C. § 1125(a), et seq.  Such unlawful use by Defendants is likely to cause confusion, mistake and deception among consumers.

71.    Defendants knowingly and willfully used, in connection with their services and/or products, a false or misleading designation of origin and a false or

15
**COMPLAINT**

misleading description and representation as to its goods and/or services, including trade dress tending falsely to describe or represent to the public that its goods and services were related to those similar goods and services provided by Plaintiff.

72. Defendants' acts were done with knowledge of the falsity of such designation of origin, description and representation or the fact that such designation, description and representation was misleading.

73. Defendants' unfair competition has caused and will continue to cause damage to Plaintiff, and is causing irreparable harm to Plaintiff for which there is no adequate remedy at law.

74. Plaintiff has been damaged by these acts in an amount to be proved at trial in excess of the minimum jurisdiction of this Court. Plaintiff is also entitled (under the Lanham Act) to injunctive and equitable relief against Defendants.

75. Defendants are directly, contributorily, or vicariously liable for these actions.

WHEREFORE, Plaintiff prays for judgment as set forth more fully below.

## FOURTH CLAIM FOR RELIEF
## COMMON LAW TRADEMARK INFRINGEMENT
### (Against all Defendants)

76. Plaintiff realleges and incorporates by this reference paragraphs 1 through 75, inclusive, of this Complaint as if fully set forth herein.

77. Plaintiff is informed and believes, and based upon such information and belief, alleges that Defendants acts constitute actionable wrongs under the common law in that Defendants' use of the GREEN CRUSH® trade dress constitutes an infringement and violation of Plaintiff's rights in its trademark, trade dress and name and creates a likelihood that Plaintiff's customers, potential customers and the public generally will be confused or misled as to the source of goods and services because

16

**COMPLAINT**

they are likely to believe that Defendants' business is identical to, or affiliated with, that of Plaintiff.

78.   Through their unlawful acts, Defendants have caused, and are continuing to cause, substantial and irreparable damage and injury to Plaintiff and to the public. Defendants have benefited from such unlawful conduct and will continue to carry out such unlawful conduct and to be unjustly enriched thereby unless enjoined by this Court.

79.   As a proximate and direct result of Defendants' acts as herein alleged, Plaintiff has sustained damages in an as yet unascertained amount to be proven at trial in excess of the minimum jurisdiction of this Court.

WHEREFORE, Plaintiff prays for judgment as set forth more fully below.

## FIFTH CLAIM FOR RELIEF
### UNFAIR BUSINESS PRACTICES – VIOLATION OF CALIFORNIA
### BUSINESS & PROFESSIONS CODE §17200
### (Against all Defendants)

80.   Plaintiff realleges and incorporates by this reference paragraphs 1 through 79, inclusive, of this Complaint as if fully set forth herein.

81.   Defendants' acts constitute actionable wrongs under California *Business and Professions Code* section 17200 in that Defendants' use of the GREEN CRUSH® trade dress constitutes infringement and violation of Plaintiff's rights in its trademarks and creates a likelihood that Plaintiff's customers, potential customers and the public generally will be confused or misled as to the source of goods and services because they are likely to believe that Defendants' business is identical to, or affiliated with that of, Plaintiff.

82.   Through their unlawful acts, Defendants have caused, and are continuing to cause, substantial and irreparable damage and injury to Plaintiff and to the public.

**COMPLAINT**

Defendants have benefited from such unlawful conduct and will continue to carry out such unlawful conduct and to be unjustly enriched thereby unless enjoined by this Court.

83.     As a proximate and direct result of Defendants' acts as herein alleged, Plaintiff has sustained damages in an as yet unascertained amount to be proven at trial in excess of the minimum jurisdiction of this Court.

WHEREFORE, Plaintiff prays for judgment as set forth more fully below.

## SIXTH CLAIM FOR RELIEF
### BREACH OF CONTRACT
### (Against DURAN)

84.     Plaintiff realleges paragraphs 1 through 83 above and incorporates them by this reference as though fully set forth herein.

85.     On or about October 31, 2014, DURAN was hired by Plaintiff GREEN CRUSH to work in its Cerritos location. As a condition of his continued employment, and pursuant to his role as manager of GREEN CRUSH's Cerritos location, DURAN willingly and knowingly executed a Confidentiality and Intellectual Property Agreement (the "Duran Agreement") on or about June 8, 2015. A true and correct copy of the Duran Agreement is attached hereto as **Exhibit "B."**

86.     The Agreement specifically refers to GREEN CRUSH's "*distinctive system relating to the establishment and operation of foodservice operations that offer agua frescas to the general public (the 'System')*." (Duran Agreement, ¶ A, italics added.) The Duran Agreement further provides, in relevant part:

> "*Employee [DURAN] acknowledges and agrees…[to] fully and strictly maintain the confidentiality of the Confidential Information [which includes, without limitation, the System], will exercise the highest degree of diligence in*

18

**COMPLAINT**

*safeguarding the Confidential Information, and will not disclose or reveal any portion of the Confidential Information to any other person without first receiving the express permission to do so from any officer of Company. In addition, Employee shall not use any of the Confidential Information in any manner or for any purpose other than the fulfillment of Employee's duties to Company."*

(Agreement, ¶ 2(c), italics added.)

87.   In or about October 2014, DURAN became Manager of GREEN CRUSH's Cerritos location. DURAN, as Store Manager, owed duties to his employer, GREEN CRUSH. Included in these duties were a duty of care, a duty of loyalty, and a duty of confidentiality. DURAN breached each of these duties.

88.   Specifically, *inter alia*, DURAN breached his written, pledged obligation and duty to maintain the strict confidentiality of GREEN CRUSH's trade dress, the origins of such trade dress and its component parts (i.e. GREEN CRUSH's System).

89.   DURAN breached his duty of confidentiality to GREEN CRUSH by failing to protect, willfully disclosing to third parties and benefitting therefrom, the confidential and proprietary information of GREEN CRUSH, such as its trade secrets, including without limitation, its recipes, business operations, and the specific components of its trade dress.

90.   Defendants engaged in corporate espionage. For example, without authorization, DURAN permitted, aided, and abetted third parties, including without limitation, ROZENBERG and MILEO, to enter a closed GREEN CRUSH store after normal business hours to secretly examine, search and otherwise inspect protected, proprietary and confidential information and processes of GREEN CRUSH for use in their own infringing SPLASH store.

**COMPLAINT**

91.    In addition, GREEN CRUSH is informed and believes that, at Defendants' specific request, MILEO and SCANNING disclosed to the other defendants the software code and related information used by GREEN CRUSH in its proprietary POS System. MILEO and SCANNING were originally engaged by GREEN CRUSH to build and implement such POS System for GREEN CRUSH alone.

92.    The Duran Agreement was supported by adequate consideration and the essential terms were known.

93.    Pursuant to the Duran Agreement, Defendant DURAN was obligated not to disclose GREEN CRUSH's proprietary and/or confidential information.

94.    Plaintiff has performed all the conditions, terms, and obligations on its part to be performed under the Duran Agreement, except those for which it is excused.

95.    Defendant DURAN materially breached the Duran Agreement by, *inter alia*, failing to maintain his duties of non-disclosure as required under the Duran Agreement.

96.    As a direct and proximate result of Defendant DURAN's breach, Plaintiff has been damaged in an amount according to proof.

WHEREFORE, Plaintiff prays for judgment as set forth more fully below.

## SEVENTH CLAIM FOR RELIEF
## BREACH OF IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING
### (Against DURAN)

97.    Plaintiff realleges paragraphs 1 through 96 above and incorporates them by this reference as though fully set forth herein.

98.    California law provides that an implied covenant of good faith and fair dealing exists in every agreement, such that neither party will do anything that will

injure the right of the other to receive the benefits of the agreement.

99.   The Duran Agreement between Plaintiff and Defendant DURAN contained no express provision contrary to the implied covenant of good faith and fair dealing.

100.   Defendant DURAN, as described herein, acted in bad faith in his execution and performance (non-performance) of the Agreement by, *inter alia*, interfering with the intellectual property rights of Plaintiff and failing to fulfill his duties of non-disclosure. In doing the acts herein described, Defendant DURAN breached the covenant of good faith and fair dealing implied in the Duran Agreement.

101.   As a proximate result of Defendant DURAN's material breaches of the doctrine of implied covenant of good faith and fair dealing, Plaintiff has been damaged in an amount according to proof.

WHEREFORE, Plaintiff prays for judgment as set forth more fully below.

## EIGHTH CLAIM FOR RELIEF
### BREACH OF CONTRACT
### (Against MILEO and SCANNING)

102.   Plaintiff realleges paragraphs 1 through 101 above and incorporates them by this reference as though fully set forth herein.

103.   In or about December 2014, MILEO and SCANNING were hired by Plaintiff GREEN CRUSH to build and implement a proprietary POS System for GREEN CRUSH.

104.   The work for hire engagement was established by agreement (the "POS Agreement") in which MILEO and SCANNING agreed to develop and provide a proprietary POS System to GREEN CRUSH for its sole use, to be owned and operated by GREEN CRUSH.

21

**COMPLAINT**

105.   In addition, as part of the POS Agreement, MILEO and SCANNING agreed not to divulge or disclose trade secrets or intellectual property of GREEN CRUSH to any third parties.

106.   Plaintiff performed all the conditions, terms, and obligations on its part to be performed under the POS Agreement, except those for which it is excused.

107.   MILEO and SCANNING breached their promise to maintain the strict confidentiality of GREEN CRUSH's business operations, including without limitation, the mechanics, coding and operation of the POS System and related intellectual property.

108.   MILEO and SCANNING further breached the POS Agreement with GREEN CRUSH by failing to protect, willfully disclosing to third parties and benefitting therefrom, the confidential and proprietary information and intellectual property of GREEN CRUSH, such as the software code and related information used by GREEN CRUSH in its proprietary POS Systems.

109.   The POS Agreement between GREEN CRUSH, on the one hand, and MILEO and SCANNING, on the other, was supported by adequate consideration and the essential terms were known.

110.   As a direct and proximate result of Defendants MILEO's and SCANNING's breach, Plaintiff has been damaged in an amount according to proof.

WHEREFORE, Plaintiff prays for judgment as set forth more fully below.

## NINTH CLAIM FOR RELIEF
## BREACH OF IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING
### (Against MILEO and SCANNING)

111.   Plaintiff realleges paragraphs 1 through 110 above and incorporates them by this reference as though fully set forth herein.

112.   California law provides that an implied covenant of good faith and fair

**COMPLAINT**

dealing exists in every agreement, such that neither party will do anything that will injure the right of the other to receive the benefits of the agreement.

113.   The POS Agreement between Plaintiff and Defendants MILEO and SCANNING contained no express provision contrary to the implied covenant of good faith and fair dealing.

114.   Defendants MILEO and SCANNING, as described herein, acted in bad faith in their execution and performance (non-performance) of the POS Agreement by, *inter alia*, interfering with the intellectual property rights of Plaintiff and failing to fulfill their duties of non-disclosure. In doing the acts herein described, Defendants MILEO and SCANNING breached the covenant of good faith and fair dealing implied in the POS Agreement.

115.   As a proximate result of Defendants MILEO's and SCANNING's material breaches of the doctrine of implied covenant of good faith and fair dealing, Plaintiff has been damaged in an amount according to proof.

WHEREFORE, Plaintiff prays for judgment as set forth more fully below.

## TENTH CLAIM FOR RELIEF
### MISAPPROPRIATION OF TRADE SECRETS
### (Against All Defendants)

116.   Plaintiff realleges and incorporates by this reference paragraphs 1 through 115, inclusive, of this Complaint as if fully set forth herein.

117.   California Civil Code section 3426.3 provides as follows:

(a)   *A complainant may recover damages for the actual loss caused by misappropriation. A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.*

(b)   *If   neither   damages   nor   unjust   enrichment   caused   by*

**COMPLAINT**

*misappropriation are provable, the court may order payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.*

*(c) If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subdivision (a) or (b).*

118. In addition, California Civil Code section 3426.1(d) provides, in relevant part:

*"Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:*

*(1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and*

*(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.*

119. And California Labor Code section 2860 provides:

*Everything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment.*

120. MILEO and SCANNING, as developers of the POS System, and DURAN as a GREEN CRUSH employee, were entrusted with access to proprietary and/or confidential information including, without limitation, the GREEN CRUSH business model, business plans, recipes, processes and systems, POS System, means of identifying potential customers and markets, identification of customers' needs, customers' buying habits, vendor identities, vendor characteristics, vendor

agreements, know-how, formats, marketing plans, strategies, forecasts, unpublished financial information, budgets and projections (hereinafter collectively the "Confidential Information").

121. MILEO, SCANNING and DURAN were entrusted with such Confidential Information based on the understanding (and their agreements) that they would use such information solely for the benefit of GREEN CRUSH, in their capacity as a work for hire of GREEN CRUSH, and that such information would be either necessary or useful to them in performing their respective duties for GREEN CRUSH.

122. On information and belief, DURAN, MILEO, and SCANNING assisted, aided, and abetted ROZENBERG and SPLASH with their unlawful and improper efforts to engage in corporate espionage to misappropriate GREEN CRUSH's trade secrets. For example, without authorization, Defendants entered a closed GREEN CRUSH store after normal business hours to secretly examine, search and otherwise inspect protected, proprietary and confidential information and processes of GREEN CRUSH for use in their own infringing SPLASH store.

123. DURAN, MILEO, and SCANNING knew that they were trusted to use the Confidential Information solely for the benefit of GREEN CRUSH.

124. DURAN, MILEO, and SCANNING had a solemn duty to act solely for the benefit of GREEN CRUSH in all matters connected with their work in connection with the use of the Confidential Information. DURAN, MILEO, and SCANNING also had a duty not to act on behalf of any adverse party in any matters connected with their work or in connection with the use of the Confidential Information, and not to compete with GREEN CRUSH in any matters connected with their work and in connection with the use of the Confidential Information. Defendants intentionally and maliciously breached each of these duties to GREEN CRUSH.

125. Defendants, and each of them, stole and utilized the Confidential

Information for use in a competing business, namely PARADISE SPLASH, thereby threatening GREEN CRUSH's ability to distinguish itself in the highly competitive restaurant industry.

126.   Defendants acted willfully and with malice and intended to damage Plaintiff, as herein alleged. Plaintiff is therefore entitled to punitive and exemplary damages in an amount to be determined at the time of trial.

127.   As a direct, legal and proximate result of Defendants' aforementioned actions, Plaintiff GREEN CRUSH has sustained damages, the exact nature and full extent of which has yet to be fully ascertained, but which is in excess of the jurisdiction of this Court.

WHEREFORE, Plaintiff prays for judgment as set forth more fully below.

## ELEVENTH CLAIM FOR RELIEF
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### (Against All Defendants)

128.   Plaintiff realleges and incorporates by this reference paragraphs 1 through 127, inclusive, of this Complaint as if fully set forth herein.

129.   Defendants were aware of the contractual relationships between GREEN CRUSH and its employees – as co-conspirator Defendant DURAN himself signed a Confidentiality and Intellectual Property Agreement with GREEN CRUSH and an Employee Handbook Receipt Acknowledgement.

130.   Despite this, on information and belief, Defendants sought to enter into competing agreements with GREEN CRUSH's employees for their benefit and the benefit of the other defendants herein in developing and operating Defendant SPLASH. Defendants thus made improper use of GREEN CRUSH's employees and prevented GREEN CRUSH from enjoying the benefits of its investment in a valuable work force.

131.   Such tortious conduct also prevented GREEN CRUSH from enjoying the benefits of the agreements it had with its employees.

132.   Defendants' conduct reveals that they either: intended to disrupt the performance of employment contracts between GREEN CRUSH and its employees, at least knew that disruption of performance was certain or substantially certain to occur, and/or did in fact disrupt and interfere with them.

133.   Defendants acted willfully and with malice and intended to damage Plaintiff, as herein alleged. Plaintiff is therefore entitled to punitive and exemplary damages in an amount to be determined at the time of trial.

134.   As a direct, legal and proximate result of Defendants' aforementioned actions, Plaintiff GREEN CRUSH has sustained damages, the exact nature and full extent of which has yet to be fully ascertained, but which is in excess of the jurisdiction of this Court.

WHEREFORE, Plaintiff prays for judgment as set forth more fully below.

## TWELFTH CLAIM FOR RELIEF
### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (Against All Defendants)

135.   Plaintiff realleges and incorporates by this reference paragraphs 1 through 134, inclusive, of this Complaint as if fully set forth herein.

136.   Defendants knew or should have known that GREEN CRUSH invested significant sums of money, and a substantial amount of time and effort, to develop its business model, distinctive trade dress, marketing plans, vendor lists and the like. This was, in part, to develop a comprehensive business operation and plan that would be easily distinguished and set itself apart from other juice businesses.

137.   The purpose of such distinctive look and feel is and was to facilitate the sale of GREEN CRUSH franchises.

138.   Defendants' tortious and unlawful conduct in infringing the look and feel of GREEN CRUSH's stores has seriously threatened, and continues to seriously threaten, GREEN CRUSH in its ability to develop franchises.

139.   In addition, GREEN CRUSH has developed and nurtured relationships with numerous customers and vendors that would have resulted in an economic benefit to GREEN CRUSH.

140.   DURAN took unfair advantage of his status as a GREEN CRUSH employee, and, in conjunction with the remaining defendants, usurped valuable business opportunities from GREEN CRUSH. MILEO and SCANNING took unfair advantage of their status as GREEN CRUSH work for hire, and, in conjunction with the remaining defendants, usurped valuable business opportunities from GREEN CRUSH.

141.   Had Defendants not unjustifiably interfered with GREEN CRUSH's prospectively advantageous relationships, GREEN CRUSH would have earned additional sales revenue from customers and enjoyed significant cost savings from vendors.

142.   Defendants' conduct reveals that they either: intended to commit the wrongful acts described herein, at least knew that their wrongful acts would cause GREEN CRUSH harm, and/or did commit such wrongful acts knowing that they would cause GREEN CRUSH harm.

143.   Defendants had no justification or privilege to engage in such wrongful acts.

144.   By engaging in the tortious conduct herein alleged, Defendants were informed and knew of the existence of likely and probable future economic advantage and/or benefit to GREEN CRUSH and intentionally interfered with that prospective

**COMPLAINT**

economic advantage and attempted to divert and misappropriate such advantage to other entities, including but not limited, PARADISE SPLASH.

145.   Despite knowing the existence of likely and probable future economic advantage or benefit to Plaintiff, Defendants instituted a pattern of conduct intended and designed to interfere with and disrupt Plaintiff's economic interests.  Further, the pattern of conduct did in fact interfere with, and disrupt, Plaintiff's interests and business operations.

146.   Defendants acted willfully and with malice and intended to damage Plaintiff, as herein alleged. Plaintiff is therefore entitled to punitive and exemplary damages in an amount to be determined at the time of trial.

147.   As a direct, legal and proximate result of Defendants' aforementioned actions, Plaintiff GREEN CRUSH has sustained damages, the exact nature and full extent of which has yet to be fully ascertained, but which is in excess of the jurisdiction of this Court.

WHEREFORE, Plaintiff prays for judgment as set forth more fully below.

## THIRTEENTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT
### (Against All Defendants)

148.   Plaintiff realleges and incorporates by this reference paragraphs 1 through 147, inclusive, of this Complaint as if fully set forth herein.

149.   Defendants are required to make restitution of the funds and the value of benefits wrongfully received because between GREEN CRUSH and Defendants, it is unjust for Defendants to retain them without making restitution. GREEN CRUSH bore the burden of establishing and operating GREEN CRUSH and maintaining its valuable proprietary and confidential intellectual property. It is unjust for GREEN CRUSH to bear such burden, while not receiving the full benefit to which it is

entitled, namely, the protection of its intellectual property from copying and other infringement by Defendants and others. However, Defendants derived a substantial, direct and pecuniary benefit from the labors, investment and efforts of GREEN CRUSH without GREEN CRUSH's consent and without any form of compensation to GREEN CRUSH.

150.   By reason of the foregoing, Defendants have received a benefit which they have unjustly retained at the expense of Plaintiff.  Defendants have been unjustly enriched in an amount exceeding the minimum jurisdiction of this Court, subject to proof.

WHEREFORE, Plaintiff prays for judgment as set forth more fully below.

## FOURTEENTH CLAIM FOR RELIEF
### CIVIL CONSPIRACY
### (Against All Defendants)

151.   Plaintiff realleges paragraphs 1 through 150 above and incorporates them by this reference as though fully set forth herein.

152.   Shortly following DURAN's hiring by GREEN CRUSH, Defendants formed a conspiracy to cause harm and injure GREEN CRUSH by, *inter alia*, stealing its valuable intellectual property, interfering with its existing and prospective business relationships and poaching its staff to gain an unfair advantage over its competitor, GREEN CRUSH.

153.   GREEN CRUSH expressly incorporates by reference all allegations regarding the wrongful and illegal acts committed by Defendants herein, including without limitation, GREEN CRUSH's first thirteen causes of action.

154.   Defendants, and each of them, worked in concert to infringe Plaintiff's valuable intellectual property, misappropriate trade secrets and tortiously interfere with Plaintiff's business and employment relationships, intentionally causing harm to

**COMPLAINT**

Plaintiff GREEN CRUSH, thereby knowingly conspiring together for an illegal purpose. Defendants have acted upon this conspiracy by violating GREEN CRUSH's property rights; breaching duties owed to Plaintiff; and otherwise intentionally causing harm to Plaintiff.

155.   Defendants' plot was formed and carried out without the knowledge or consent of Plaintiff. Defendants effectuated the conspired plan by making misrepresentations to Plaintiff, misappropriating customer and vendor lists, trade dress specifications, operational plans, trade secrets, and other valuable intellectual property for an illegal purpose.

156.   In addition to the conduct described herein, Defendants also conspired to intentionally interfere with Plaintiff's contractual relations and prospective economic advantage, resulting in Defendants' unjust enrichment.   Defendants formed and operated the conspiracy to injure Plaintiff for their own benefit.

157.   Defendants acted in both their individual and representative capacities in committing the conduct complained of herein.

158.   On information and belief, the conspiratorial conduct alleged herein is still ongoing, constituting multiple wrongful acts done in furtherance of a common design and/or plan.

159.   As a direct, legal and proximate result of Defendants' aforementioned actions, Plaintiff GREEN CRUSH has sustained damages, the exact nature and full extent of which has yet to be fully ascertained, but which is in excess of the jurisdiction of this Court.

WHEREFORE, Plaintiff prays for judgment as set forth more fully below.

///

///

///

///

**COMPLAINT**

## FIFTEENTH CLAIM FOR RELIEF
### AN ACCOUNTING
### (Against All Defendants)

160.   Plaintiff realleges and incorporates by this reference paragraphs 1 through 159, inclusive, of this Complaint, as though fully set forth herein.

161.   Despite demand made by GREEN CRUSH and its officers to Defendants, Defendants have failed to fully and properly account for the revenue and other income generated as a result of Defendants' unlawful infringement. The amount of money owing to GREEN CRUSH, and the respective balances, credits and debits from these accounts cannot be ascertained without a full accounting and itemization thereof. Defendants should thus be required to provide a full and complete account.

WHEREFORE, Plaintiff prays for judgment as set forth more fully below.

## SIXTEENTH CLAIM FOR RELIEF
### DECLARATORY RELIEF
### (Against All Defendants)

162.   Plaintiff realleges and incorporates by this reference paragraphs 1 through 161, inclusive, of this Complaint, as though fully set forth herein.

163.   An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties under the Agreement (as applicable) and as to the trade dress of GREEN CRUSH[®].

164.   Plaintiff contends, as stated herein, that certain Defendants (DURAN, MILEO, and SCANNING) have breached their respective Agreements with GREEN CRUSH and have infringed Plaintiff's trade dress and intellectual property.

165.   Plaintiff is informed and believes, and thereon alleges, that Defendants dispute Plaintiff's contentions regarding infringement and breach of the Agreements.

166.   Plaintiff desires a judicial determination of the parties' respective rights

**COMPLAINT**

and duties pertaining to the Agreements and the infringement of the GREEN CRUSH® trade dress.

WHEREFORE, Plaintiff prays for judgment as set forth more fully below.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff prays for judgment against Defendants, and each of them, as follows:

## **AS TO THE FIRST, SECOND, THIRD AND FOURTH CLAIMS FOR RELIEF**

1.      Issue a permanent injunction, enjoining and prohibiting Defendants, and/or their agents, servants, employees, officers, attorneys, successors and assigns, and all others in active concert or participation with Defendant from:

A.      Using the "GREEN CRUSH" trade dress, name, mark, or any version thereof, in connection with the description, marketing, promotion, advertising, or sale of any products or services;

B.      Infringing on Plaintiff's "GREEN CRUSH" trademark and/or trade dress;

C.      Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (A) to (B) above.

2.      Order Defendants, and their agents, servants and employees and all persons acting in concert with or for him, to file with this Court and serve on Plaintiff within thirty (30) days after service of an injunction, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

3.      Order Defendants, and their agents, servants and employees an all

33

**COMPLAINT**

persons acting in concert with or for them, to deliver up and destroy any and all infringing materials including recipes and related goods, labels, advertising, website links, and literature bearing any infringing designations and/or infringing trade dress;

4.    Order an award of damages in an amount to be determined at trial;

5.    Order an award of the attorney fees and costs of this action, in an amount to be determined at trial, pursuant to 15 U.S.C. § 1117, et seq. and other applicable federal and state law;

6.    Order that Defendants be required to account for all gains, profits, and advantages from their acts of infringement;

7.    Order Defendants to post corrective advertising specifically indicating to the public that Defendants were using trade dress confusingly similar to that of Plaintiff, and that Defendants are not affiliated in any way with Plaintiff;

8.    Order requiring Defendants to disgorge any and all profits received by their use of Plaintiff's intellectual property;

9.    Order an award of treble damages, in an amount to be determined at trial, pursuant to 15 U.S.C. § 1117(b);

10.    Order an award for the maximum statutory damages permitted per type of goods or services sold, offered for sale, or distributed using Plaintiff's intellectual property;

11.    For all costs;

12.    For prejudgment interest;

13.    For such other relief as the Court deems just and proper.

## <u>AS TO THE FIFTH CLAIM FOR RELIEF</u>

1.    A preliminary and permanent injunction enjoining Defendants and their officers, directors, employees, agents, subsidiaries, distributors, dealers, and all persons in active concert or participation with any of them from using Plaintiff's trade

**COMPLAINT**

dress, trademark or trade name, or any confusingly similar dress, mark(s) or trade name(s), including, but not limited to, the name GREEN CRUSH®, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, or any related activities;

2.     An Order directing the destruction of Defendant's materials bearing Plaintiff's trade dress, trademark or trade name, or any confusingly similar dress, marks or trade name, including, but not limited to, the name GREEN CRUSH®, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, or any related activities;

3.     An Order directing the recall from the marketplace of all materials bearing Plaintiff's trade dress, trademarks or trade name, identity, or any confusingly similar dress, marks or trade name, including, but not limited to, the name GREEN CRUSH®, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, or any related activities.

4.     For such other relief as the Court deems just and proper.

## AS TO THE SIXTH, SEVENTH, EIGHTH AND NINTH CLAIMS FOR RELIEF

1. For general and compensatory damages in an amount to be proven at trial;

2. For consequential damages in an amount representing the immediate, proximate and foreseeable losses to Plaintiff that arose as a consequence of Defendants' breach;

3. For all costs;

4. For prejudgment interest;

**COMPLAINT**

5. For such other relief as the Court deems just and proper.

## AS TO THE TENTH, ELEVENTH, TWELFTH AND FOURTEENTH CLAIMS FOR RELIEF

1. For general and compensatory damages in an amount to be proven at trial;
2. For consequential damages in an amount representing the immediate, proximate and foreseeable losses to Plaintiff that arose as a consequence of Defendants' tortious conduct;
3. For special damages;
4. For punitive and/or exemplary damages, according to proof;
5. For fees, including reasonable attorneys' fees, and costs;
6. For prejudgment interest;
7. For such other relief as the Court deems just and proper.

## AS TO THE THIRTEENTH CLAIM FOR RELIEF

1. For general and compensatory damages according to proof;
2. For restoration to Plaintiff of the benefits received by Defendants;
3. For restitution of the benefits received by Defendants, according to proof;
4. For the imposition of a constructive trust on the property unjustly obtained by Defendants;
5. For an equitable lien on the property unjustly obtained by Defendants;
6. For injunctive relief;
7. For cost of suit herein, including pre-judgment interest; and
8. For such other relief as the Court deems just and proper.

**COMPLAINT**

## AS TO THE FIFTEENTH CLAIM FOR RELIEF

1.     For an order of this Court requiring Defendants to provide a detailed accounting;

2.     For fees incurred herein;

3.     For cost of suit herein; and

4.     For any such other and further relief the curt deems just and proper.

## AS TO THE SIXTEENTH CLAIM FOR RELIEF

1.     For a declaration of the rights, duties and obligations of the parties as stated herein;

2.     For cost of suit herein, including pre-judgment interest; and

3.     For any such other and further relief as the Court determines is just and proper.

DATED:  October 3, 2017                         ULWELLING | SIDDIQUI LLP


                                        By:_____
                                                **OMAR A. SIDDIQUI**
                                                **DANIEL M. JOSEPHSON**
                                                **BRITTANY A. ORTIZ**
                                                Attorneys for Plaintiff,
                                                **GREEN CRUSH, LLC**

**COMPLAINT**

1

## DEMAND FOR JURY TRIAL

Plaintiff GREEN CRUSH, LLC hereby enters a demand for a jury trial in this case on all matters properly determined by a jury.

Respectfully submitted,

DATED:  October 3, 2017                          **ULWELLING | SIDDIQUI  LLP**

By: _____
  **OMAR A. SIDDIQUI**
  **DANIEL M. JOSEPHSON**
  **BRITTANY A. ORTIZ**
  Attorneys for Plaintiff,
  **GREEN CRUSH, LLC**

1

**DEMAND FOR JURY TRIAL**