1
2
3
4
5
6
7
8
9          UNITED STATES DISTRICT COURT
10         CENTRAL DISTRICT OF CALIFORNIA
11             SOUTHERN DIVISION
12
13                                    )    Case No.: SACV 17-01856-CJC(JDEx)
                                      )
14   GREEN CRUSH LLC,                 )
                                      )
15                                    )
                                      )
16         Plaintiff,                 )    ORDER GRANTING IN
                                      )    SUBSTANTIAL PART DEFENDANTS'
17         v.                         )    MOTION TO DISMISS [21] [23]
                                      )
18   PARADISE SPLASH I, INC., *ET AL.*, )
                                      )
19                                    )
                                      )
20         Defendants.                )
                                      )
21                                    )
                                      )
22                                    )
                                      )
23                                    )

24

25   **I.  INTRODUCTION**

26

27         On October 23, 2017, Plaintiff Green Crush LLC filed this action against

28   Defendants Paradise Splash I, Inc. ("Paradise Splash"), Adrian Duran, John C.

Rozenberg, Scanning L.A., Inc. ("Scanning"), Claudio Mileo, and Does 1 through 10, asserting sixteen claims arising out of Defendants' alleged use of Plaintiff's trade dress and trade secrets.  (Dkt. 1 [Complaint, hereinafter "Compl."].)  Defendants filed a motion to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (Dkt. 16.)  The Court granted Defendants' motion, dismissing two of Plaintiff's claims with prejudice and dismissing fourteen claims with leave to amend.  (Dkt. 21.)  On March 22, 2018, Plaintiff filed a First Amended Complaint ("FAC").  (Dkt. 22 [FAC].)  Before the Court is Defendants' motion to dismiss Plaintiff's FAC for failure to state a claim under Rule 12(b)(6).  (Dkt. 23 [hereinafter "Mot."].)  For the following reasons, the motion is GRANTED IN SUBSTANTIAL PART.[1]

## II.  BACKGROUND

Plaintiff Green Crush LLC is a California limited liability company that has owned and operated Green Crush stores in Southern California and Las Vegas since 2012.  (FAC ¶¶ 8, 27–28.)  Green Crush stores are juice and smoothie bars that sell fresh mixed fruit and vegetable *aguas frescas*.  (*Id*. ¶¶ 27–28.)  Plaintiff has two registered trademarks for "GREEN CRUSH®" and its logo, with another logo design mark registration currently pending.  (*Id*. ¶¶ 44–45.)  Plaintiff alleges that it has "expended considerable sums of money and invested substantial time, energy, and resources" in developing its business plan, trademarks, trade dress, trade secrets, and products.  (*Id*. ¶¶ 30, 48.)  Defendant Paradise Splash is a California corporation that began operating a juice and smoothie bar in Tempe, Arizona in 2016 ("the Splash store").  (*Id*. ¶¶ 9, 31, 42.)  Plaintiff alleges that Rozenberg and Mileo opened the Splash store together.  (*Id*.)

---

[1]  Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for May 7, 2018, at 1:30 p.m. is hereby vacated and off calendar.

Plaintiff alleges it has a protectable trade dress, constituting the "design and look and feel of its stores," which "has developed a distinctiveness and notoriety within GREEN CRUSH's market, industry and customer base." (*Id.* ¶¶ 47–58.) Plaintiff specifically alleges as follows:

> GREEN CRUSH's Trade Dress is distinctive, recognizable, protectable, and non-functional. GREEN CRUSH's Trade Dress is exemplified by the totality of the look and feel of its store design, which includes its distinctive color scheme, store design, store layout, use of distinctive "wave-like" design elements, deliberate and calculated product presentation and physical placement within each store, modern-looking, streamlined, order counter, unique and distinctive cup (container) design and placement, employee uniforms and dress characteristic of, and complementary to, the other store design elements, the design and look of wall markings and features (such as photographs of GREEN CRUSH's protected recipe drink offerings); and other readily identifiable design elements which contribute to the look and feel of GREEN CRUSH's stores.

(*Id.* ¶ 50.) Plaintiff attaches pictures of its stores to the FAC. (*Id.* ¶¶ 51–55; Exs. C–F.) Plaintiff alleges that the trade dress identified in the FAC is "inherently non-functional" as it is made of "design and appearance-based elements which contribute to GREEN CRUSH's brand and product recognition. None of these elements are either *de facto* or *de jure* functional, as they are not essential to the ability of GREEN CRUSH to sell drinks to the public nor are they necessary to ensure fair competition." (*Id.* ¶ 58.)

Plaintiff alleges that Defendants have infringed upon and misappropriated Plaintiff's alleged trade dress by using "identical or nearly identical" features in the Splash store and in marketing materials, which "amounts to their own, unauthorized GREEN CRUSH 'franchise.'" (*Id.* ¶¶ 47, 49, 57, Ex. H.) Plaintiff alleges its store and the Splash store share "identical or nearly identical features," including design facades of the lower counter area and upper store fronts, placement of white countertops and "colorful oval glass containers," use of a green and red logo and sign, display of *aguas*

*frescas* in "large, oval glass containers with textured glass ribbons" with small easels stating the product offering, depictions of such containers on the interior walls of the store, use of "wavy design elements," and "the color scheme; layout; design features; employee dress; cup display and design' [sic] product placement; and other design elements." (*Id*. ¶¶ 51–55; Exs. C–F.) Plaintiff also alleges that the Splash logo is similar in its color scheme and design to Plaintiff's logo. (*Id*. ¶ 56, Ex. G.) Plaintiff further alleges that Defendants' use of Plaintiff's trade dress has interfered with Plaintiff's "ability to develop franchises" and "usurped valuable business opportunities from [Plaintiff]." (*Id*. ¶¶ 150, 152.) Plaintiff alleges that had Defendants not interfered with its "prospectively advantageous relationships," Plaintiff "would have earned additional sales revenue from customers and enjoyed significant cost savings from vendors." (*Id*. ¶ 153.)

Plaintiff hired Defendant Duran around October 2014 to be a Store Manager at its Cerritos Mall store. (*Id*. ¶ 33.) Plaintiff trained Duran for about four weeks, and during his employment, Plaintiff alleges that Duran "had nearly unfettered access to proprietary and confidential company information of GREEN CRUSH, including its proprietary trade recipes . . . and trade secrets." (*Id*.) Duran allegedly had access to "supplier lists, vendor lists, food storage practices, inventory management, customer service model, specific software code and operational details of the POS System, internal details regarding GREEN CRUSH's employment structure and compensation packages, internal details regarding GREEN CRUSH's expansion plans and franchising opportunities, marketing research findings, location profitability analyses; and employee on-boarding/training techniques." (*Id*.) Plaintiff alleges that "as a condition of his continued employment," Duran signed a Confidentiality and Intellectual Property Agreement (the "Duran Agreement"). (*Id*. ¶ 97, Ex. B.) The Duran Agreement refers to Plaintiff's "distinctive system relating to the establishment and operation of foodservice operations that offer *agua frescas* to the general public (the 'System')" and by signing it, Duran agreed to "fully and strictly maintain the confidentiality of the Confidential Information

which includes, without limitation, the System."  (*Id*. ¶ 98, Ex. B §§ B, 2(c).)

Plaintiff alleges, on information and belief, that Duran used its proprietary and confidential operating information for the benefit of Defendants without Plaintiff's authorization, and planned to do so before Plaintiff hired him.  (*Id*. ¶¶ 34–35.)  Plaintiff specifically alleges that Duran "repeatedly asked" Plaintiff's senior employees about Plaintiff's distribution center operations, as well as made "multiple inquiries" regarding drink recipes, equipment, design, placement, etc.  (*Id*. ¶ 36.)  Plaintiff also alleges on information and belief that Duran granted after-hours access to one of Plaintiff's stores to Rozenberg and Mileo, "for the purpose of copying GREEN CRUSH'S business plans, models and related confidential and proprietary information and trade secrets."  (*Id*. ¶ 37.)

Defendant Scanning is a California corporation that works as a Point-of-Sale ("POS") system technology contractor.  (*Id*. ¶¶ 12, 39.)  Defendant Mileo is Scanning's president.  (*Id*. ¶ 12.)  Plaintiff engaged Scanning, through Mileo, around December 2014 "to build and implement a proprietary POS System for [Plaintiff]."  (*Id*. ¶¶ 39, 115.)  This engagement "was established by agreement (the 'POS Agreement') in which MILEO and SCANNING agreed to develop and provide a proprietary POS System to GREEN CRUSH for its sole use, to be owned and operated by GREEN CRUSH."  (*Id*. ¶ 116.)  "As part of their engagement, SCANNING and MILEO agreed not to divulge or disclose trade secrets, including but not limited to [Plaintiff's] POS System technology [] to any third party as part of their understanding of the terms of agreement and engagement with GREEN CRUSH."  (*Id*. ¶¶ 39, 117.)  Plaintiff alleges that it has a "protectable interest in . . . the software and code used in the POS System to the exclusion of others."  (*Id*. ¶ 38.)

Plaintiff alleges, on information and belief, that Duran, Mileo, and Scanning improperly manipulated Plaintiff's POS system and copied and utilized its "proprietary code, look and feel without consent," and thus "breached their promise to maintain strict

confidentiality of Green Crush's business operations."  (*Id.* ¶¶ 38, 119–20.)  Plaintiff also alleges that, "in breach of their agreement with GREEN CRUSH," all named Defendants "copied nearly all of the GREEN CRUSH back office protocols, trade secrets and procedures embodied in the POS System and elsewhere, copied the complete trade dress and design (the 'look and feel') of GREEN CRUSH'S stores and copied the business model GREEN CRUSH invested so much time and money to develop."  (*Id.* ¶ 40.) Plaintiff also alleges that Paradise Splash "poached and solicited" a "number of [Plaintiff's] employees" to work at the Splash store.  (*Id.* ¶ 41.)  Plaintiff alleges that some of these poached employees "asked if the store under construction was a GREEN CRUSH store because it looked just like one."  (*Id.*)

Plaintiff brings fourteen causes of action arising out of these alleged acts.  Plaintiff asserts ten causes of action against all Defendants: (1) trade dress infringement, 15 U.S.C. §§ 1121 *et seq.*, (*id.* ¶¶ 59–73); (2) false designation of trade dress origin, 15 U.S.C. § 1125(a), (*id.* ¶¶ 74–80); (3) unfair competition, 15 U.S.C. § 1125(a) *et seq.*, (*id.* ¶¶ 81–87); (4) common law trademark infringement, (*id.* ¶¶ 88–91); (5) unfair business practices, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, (*id.* ¶¶ 92–95); (6) misappropriation of trade secrets, (*id.* ¶¶ 127–38); (7) tortious interference with contract, (*id.* ¶¶ 139–45); (8) tortious interference with prospective economic advantage, (*id.* ¶¶ 146–159); (9) civil conspiracy, (*id.* ¶¶ 160–68); and (10) an accounting, (*id.* ¶¶ 169–71).  Plaintiff also asserts causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing against Duran, (*id.* ¶¶ 96–113), and Mileo and Scanning, (*id.* ¶¶ 114–26).

## III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  The issue on a motion to dismiss for

failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).  The district court may also consider additional facts in materials that the district court may take judicial notice, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994), as well as "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994*), overruled in part on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citations and quotes omitted)).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft*, 556 U.S. at 679.  Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

//

## IV.  DISCUSSION

### A.        Trade Dress Infringement

While Plaintiff added additional facts to the FAC regarding the components of its trade dress, Plaintiff has not pled sufficient factual allegations to support its trade dress infringement claim.  "Trade dress protection applies to 'a combination of any elements in which a product is presented to a buyer,' including the shape and design of a product." *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009) (quoting J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 8:1, at 8–3 (4th ed. 1996)).  To recover for trade dress infringement, a plaintiff must prove that (1) the design is inherently distinctive or acquired distinctiveness through a secondary meaning, (2) the design is nonfunctional, and (3) there is a likelihood that the defendant's use of the plaintiff's trade dress is likely to cause consumer confusion.  *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1005 (9th Cir. 1998).  "A plaintiff should clearly articulate its claimed trade dress to give a defendant sufficient notice." *Sleep Science Partners v. Lieberman*, No. 09-4200 CW, 2010 WL 1881770, at *3 (N.D. Cal. May 10, 2010) (citing *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1174 (N.D. Cal. 2007)).  The Court must "look at the overall visual impression that the combination and arrangement of individual elements create." *Millennium Labs., Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1130 (9th Cir. 2016).

Plaintiff's FAC has alleged with specificity the components of its purported trade dress: the "color scheme, store design, store layout, use of distinctive 'wave-like' design elements, deliberate and calculated product presentation and physical placement within each store, modern-looking, streamlined, order counter, unique and distinctive cup (container) design and placement, employee uniforms and dress characteristic of, and complementary to, the other store design elements, the design and look of wall markings

and features (such as photographs of GREEN CRUSH's protected recipe drink offerings)." (FAC ¶ 50.) Plaintiff provides greater specificity to describe these elements through the attached exhibits, and the comparison of its store to the Splash store, including specific design elements in the store front, countertops, and presentation of *aguas frescas*. (*Id*. ¶¶ 51–55; Exs. C–F.) These elements are part of the "look and feel" of the store and therefore may constitute protectable trade dress.

However, Plaintiff's alleges its trade dress includes "other readily identifiable design elements which contribute to the look and feel of GREEN CRUSH's stores." (FAC ¶ 50.) This language suggests that the identified elements "are only some among many, which raises a question of whether [the plaintiff] intends to redefine its trade dress at a future stage of litigation." *Sleep Sci. Partners*, 2010 WL 1881770 at *3. Plaintiff must allege all elements it that comprise its trade dress in order to provide Defendants sufficient notice. *See Salt Optics, Inc. v. Jand, Inc.*, No. SACV 10-0828 DOC, 2010 WL 4961702, at *5 (C.D. Cal. Nov. 19, 2010) ("Plaintiff's expressly stated intention to incorporate other elements of the website into the trade dress claim at a later stage, gives the Court pause.").

Plaintiff also has not sufficiently alleged that its purported trade dress has acquired a secondary meaning. Secondary meaning is "a term of art for identification of source." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1262 (9th Cir. 2001). "The trade dress of a product or service attains secondary meaning when the purchasing public associates the dress with a particular source." *Id.* (citation omitted). While "the existence of secondary meaning may be inferred from evidence relating to the nature and extent of the public exposure achieved by the designation, or from proof of intentional copying," conclusory allegations about the existence of marketing efforts and intentional copying do not sufficiently allege that a trade dress has acquired a secondary meaning. *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, No. CV 15-769 PSG (SSX), 2015 WL

12731929, at *5 (C.D. Cal. May 8, 2015); *Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 517 (9th Cir. 1989) ("Evidence of use and advertising over a *substantial* period of time is enough to establish secondary meaning.") (emphasis added).

Plaintiff alleges that its trade dress has been "widely publicized" in various media forms and "has come to convey a distinctive experience and the highest quality ingredients and products to consumers, customers, and others."  (Dkt. 25 [Plaintiff's Opposition, hereinafter "Opp."] at 8–12.) at 10; FAC ¶¶ 60–65].)  Plaintiff also alleges that Defendants have intentionally copied its trade dress "in a manner that is likely to cause [consumer] confusion."  (FAC ¶¶ 47–78.)  Plaintiff's allegations lack specificity about the breadth or temporal span of its advertising, the amount spent on advertising, or examples of customer recognition.  *Cf. Solofill, LLC v. Rivera*, No. CV1702956SJOAJWX, 2017 WL 5953105, at *4 (C.D. Cal. Oct. 16, 2017) (Plaintiff sufficiently alleged secondary meaning because it "has continuously used its trade dresses in commerce for more than seven years and that it has expended millions of dollars promoting its product," and "its trade dresses have come to signify the quality and reputation of one of the world's top selling and most popular reusable brewing cartridges and that they have enjoyed extensive media coverage recognition and accolades, positive customer reviews and testimonials.") (internal quotations omitted.); *Mercado Latino, Inc. v. Indio Prod., Inc.*, No. CV1301027DDPRNBX, 2017 WL 1356315, at *3 (C.D. Cal. Apr. 11, 2017) (Plaintiff sufficiently alleged secondary meaning because plaintiff promoted and sold its product "for over twenty years," "has marketed [its product] through advertisements, sales representatives, and catalogs," and "consumers seek out [its product] and that Plaintiff is the exclusive source of the trade dress, which identifies Plaintiff as its source.").

Moreover, "the key factual assertion" to establish secondary meaning is "the association of the plaintiff with a particular good or goods."  *Deckers Outdoor Corp.*,

2015 WL 12731929, at *5.  Plaintiff has failed to allege that the consumers associate the purported trade dress with Plaintiff.  (*See* FAC ¶ 65 ["For consumers, customers, vendors, and clients, GREEN CRUSH has come to mean the highest quality."].)  And Plaintiff has failed to identify "what the consuming public accepts and recognizes about the trade dress."  *Deckers Outdoor Corp.*, 2015 WL 12731929, at *5 (dismissing trade dress infringement claim because the plaintiff made conclusory allegations about public exposure, sales, marketing, and intentional copying, but failed to allege that the product's trade dress had acquired a secondary meaning with the consuming public).

Plaintiff has failed to state a claim for trade dress infringement.  Since this claim could possibly be cured by amendment, Plaintiff's trade dress infringement cause of action is **DISMISSED WITH FOURTEEN DAYS' LEAVE TO AMEND**.  It is unnecessary for the Court to determine whether Plaintiff has sufficiently alleged facts to support the other elements of trade dress infringement, i.e., non-functionality and the likelihood of consumer confusion.  However, Plaintiff would be well-advised to consider Defendants' arguments regarding those elements should it choose to amend its claim.

### B.      Unfair Business Practices in Violation of the UCL

The FAC fails to allege facts sufficient to support Plaintiff's claim for unfair business practices in violation of the UCL.  "A plaintiff may only seek equitable relief under California's UCL where she has no adequate remedy at law."  *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1203 (N.D. Cal. 2016) (citing *Philips v. Ford Motor Co.*, No. 14–CV–02989–LHK, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015) ("[T]he UCL provides only the equitable remedies of restitution and injunctive relief.  A plaintiff seeking equitable relief in California must establish that there is no adequate remedy at law available.")  Where, as here, a plaintiff can seek monetary damages and injunctive relief if it prevails on claims for under the Lanham Act and for breach of contract or

breach of the implied covenant of good faith and fair dealing, the plaintiff has an adequate remedy at law. *Id.* (dismissing the plaintiffs' UCL and CLRA claims because the plaintiffs' other claims provided an adequate remedy at law) (collecting cases); *see also Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1259 (C.D. Cal. 2003) (dismissing the plaintiff's UCL claim in part because the plaintiff failed to allege that he has no adequate remedy at law).

Plaintiff's UCL claim is based on the same underlying allegations as Plaintiff's other thirteen claims, and specifically refers to Defendants' alleged trade dress infringement. (FAC ¶¶ 92–95.) The injunctive relief Plaintiff requests in its prayer for relief for its UCL claim is identical to the injunctive relief requested for its trade dress infringement, false designation of origin, and unfair competition claims. (*Compare* FAC at 39–40 and 40–41.) In light of the duplicative nature of Plaintiff's UCL claim, Plaintiff has not pled that it has "no adequate remedy at law." Plaintiff does not address this argument in its opposition. (*See* Opp. at 14–15.) While some courts dismiss a plaintiff's UCL claim with leave to amend where the plaintiff failed to allege he had no adequate remedy at law, here Plaintiff has not even attempted to argue that its UCL claim does not arise out of a common factual predicate as its other causes of action. *Cf. Zapata Fonseca v. Goya Foods Inc.*, No. 16-CV-02559-LHK, 2016 WL 4698942, at *8 (N.D. Cal. Sept. 8, 2016) (dismissing the plaintiff's UCL claim with leave to amend because the plaintiff could possibly distinguish that claim from its other causes of action). Thus, amendment would be futile. The Court **DISMISSES WITH PREJUDICE** Plaintiff's UCL claim.[2]

//
//
//

---

[2] Defendants also argue that this claim fails because Plaintiff impermissibly seeks money damages, (Opp. at 16–17), but Plaintiffs seeks only equitable relief for this claim, (FAC at 41–42).

## C.   Claims Predicated on Plaintiff's Alleged Trade Dress

Plaintiff's causes of action for false designation of trade dress origin[3], unfair competition, common law trademark infringement, and accounting rely on Plaintiff's purported trade dress.  (FAC ¶¶ 77, 82, 89, 170.)  Thus, Plaintiff has failed to state a claim for these four causes of action because Plaintiff has failed to sufficiently allege a protectable trade dress.  *See Seirus Innovative Accessories, Inc. v. Gordini U.S.A. Inc.*, 849 F. Supp. 2d 963, 989 (S.D. Cal. 2012) (granting summary judgment against plaintiff on its claims for false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), because "both require that [the plaintiff] have an underlying trade dress protection"); *Credit One Corp. v. Credit One Financial, Inc.*, 661 F. Supp. 2d 1134, 1137 (C.D. Cal. 2009) ("In order to prevail on a Lanham Act false designation claim or a common law trademark infringement claim, a plaintiff must show that it owns a valid mark, that the mark was used without its consent, and that such unauthorized use is likely to cause confusion, mistake, or deception.").  Since Plaintiff's causes of action for false designation of origin, unfair competition, common law trademark infringement, and accounting could possibly be cured through amendment, these five claims are **DISMISSED WITH FOURTEEN DAYS' LEAVE TO AMEND**.

//

---

[3] Defendants argue that Plaintiff's false designation of origin claim fails as a matter of law.  (Opp. at 15–16.)  They cite *Deckers Outdoor Corp. v. J.C. Penney Co. Inc.*, 45 F. Supp. 3d 1181, 1184 (C.D. Cal. 2014), which relied on *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) to hold that the plaintiff's claim failed as a matter of law because the defendant was the origin of the product at issue.  However, "[t]he ruling in *Dastar* should have no impact on . . . classic claims of infringement." *McCarthy on Trademarks and Unfair Competition* § 27:78.30 (noting the *Deckers Outdoor Corp*. ruling was an "erroneous" interpretation of *Dastar*).  Plaintiff's allegations of trade dress infringement are allegations that Defendants' use of the trade dress is a false claim that Plaintiff is either making Defendants' products or has licensed or endorsed them in some way.  *See Slep-Tone Entm't Corp. v. Sellis Enterprises, Inc.*, 87 F. Supp. 3d 897, 905 (N.D. Ill. 2015) ("Because the producer of the new good (karaoke jockeys) and the markholder of the mark on the goods (Slep–Tone) do not match, the alleged use of SlepTone's mark on the copied tracks is a false designation of origin covered by the Lanham Act.").

### D.     Misappropriation of Trade Secrets

The FAC fails to allege facts sufficient to support Plaintiff's claim for misappropriation of trade secrets.  To state a claim for misappropriation of trade secrets under the California Trade Secrets Act ("CUTSA"), a plaintiff must allege: "(1) the existence of a trade secret, and (2) misappropriation of the trade secret."  *AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 950 (N.D. Cal. 2003). "'Trade secret' means information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Cal. Civ. Code § 3426.1(d) (CUTSA).  "[A] plaintiff who seeks relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing that they exist."  *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993).

In addition to the "proprietary and confidential information" that Plaintiff alleged constituted protectable trade secrets in the Complaint, (*compare* Complaint ¶ 120 to FAC ¶ 131), Plaintiff alleges in the FAC that its "trade secrets" include "the specific software code and operational details of the POS System; internal details regarding GREEN CRUSH's employment structure and compensation packages; internal details regarding GREEN CRUSH's expansion plans and franchising opportunities; marketing research findings; location profitability analyses; and secret recipes for unique *aguas frescas* drink blends," (FAC ¶ 131).  Plaintiff has provided sufficient detail regarding the alleged trade secrets at issue.  However, the FAC contains no factual allegations regarding the independent economic value of those trade secrets or Plaintiff's efforts to maintain secrecy.  In its Opposition, Plaintiff does not address this deficiency.  (*See* Opp. at 19–22.)  Accordingly, Plaintiff has failed to state a claim for misappropriation of trade

secrets.  Since this claim could possibly be cured by amendment, Plaintiff's misappropriation of trade secrets cause of action is **DISMISSED WITH FOURTEEN DAYS' LEAVE TO AMEND**.

### E.      Breach of Contract–Duran

Plaintiff has pled sufficient facts to support its breach of contract claim against Duran.  Under California law, to state a claim for breach of contract, a plaintiff must plead facts establishing "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).  Plaintiff has attached a copy of the Duran Agreement, signed by Duran, to the FAC.  (FAC Ex. B.) Pursuant to the Duran Agreement, Duran agreed to "fully and strictly maintain the confidentiality of the Confidential Information," (*id*. § 2(c) ["Confidentiality Provision"]), which the agreement defines as "without limitation, products, recipes, and menu items that incorporate the Company's trade secrets and proprietary information; standards and specifications for construction of retail facilities, products, supplies and services; uniform standards, specifications, procedures for operations; procedures for inventory and management control; employment practices; training and assistance; and marketing, advertising and promotional programs," (*id*. § B).  Plaintiff alleges that Duran breached this provision by failing to protect and willfully disclosing to third parties confidential information including Plaintiff's "trade secrets,  . . . recipes, business operations . . . internal operations; drink recipes; inventory management; employee organization; employee compensation; marketing plans; and other internal and propriety [sic] information." (*Id*. ¶¶ 34, 37, 101–02.)  Plaintiff also alleges that it performed all of its obligations under the contract, and Duran's use of the confidential information harmed Plaintiff.  (*Id*. ¶¶ 107–08.)  These facts are sufficient to state a claim for breach of the Confidentiality Provision of the Duran Agreement.

Plaintiff also alleges that Duran breached the Duran Agreement by disclosing Plaintiff's "trade dress, the origins of such trade dress and its component parts," (*id.* ¶¶ 100–01), and at "Defendants' specific request, MILEO and SCANNING disclosed to the other defendants the software code and related information used by GREEN CRUSH in its proprietary POS System," (*id.* ¶ 103). Neither Plaintiff's alleged trade dress nor its POS system are listed as confidential information covered by the Duran Agreement. (*See generally id.* Ex. B.) In its Opposition, Plaintiff does not explain how either category of information is covered by the Confidentiality Provision. As Plaintiff's purported trade dress is displayed publicly, it is implausible that the trade dress was "confidential" information. *See, e.g., Farhang v. Indian Inst. of Tech., Kharagpur*, No. C-08-02658 RMW, 2010 WL 2228936, at *6 (N.D. Cal. June 1, 2010) (holding that the plaintiff did not provide a reasonable basis to infer that confidential information was improperly disclosed because its allegations merely suggested that marketing materials were provided to the media, but did not suggest that such materials were confidential). Thus, Plaintiff has failed to state a claim based on Duran's disclosure of Plaintiff's trade dress and POS System. Accordingly, the Court **DISMISSES WITH FOURTEEN DAYS' LEAVE TO AMEND** Plaintiff's claim for breach of contract against Duran as to Plaintiff's trade dress and POS System, but **DENIES** Defendants' motion to dismiss as to Plaintiff's other allegations.

### F. Breach of Contract–Mileo and Scanning

The Court previously dismissed Plaintiff's claim for breach of contract against Mileo and Scanning for failure to plead the terms of the POS Agreement, and whether the information Mileo and Scanning allegedly divulged was covered by the POS Agreement. In the FAC, Plaintiff has added the allegation that "MILEO and SCANNING developed and implemented the POS System for use in GREEN CRUSH STORES, which included proprietary software code, product management functions, inventory management

functions, and related proprietary intellectual property." (FAC ¶ 118.) This additional factual allegation does not cure Plaintiff's conclusory allegations that through the POS Agreement, Mileo and Scanning "agreed not to divulge or disclose trade secrets or intellectual property of GREEN CRUSH to any third parties," (*id*. ¶ 117; *see also* Compl. ¶ 105), and that the two Defendants breached their obligations of confidentiality and "willfully disclos[ed] to third parties . . . the confidential and proprietary information and intellectual property of GREEN CRUSH, such as the software code and related information," (FAC ¶¶ 119–120; Compl. ¶¶ 107–08). Plaintiff maintains that it has set forth the "material terms" of the POS Agreement. (Opp. at 17–18.)

"To sufficiently plead breach of contract under California law, the claimant must plead, among other things, the contract either by its terms, set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference, or by its legal effect." *N. Cty. Commc'ns Corp. v. Verizon Glob. Networks, Inc*., 685 F. Supp. 2d 1112, 1122 (S.D. Cal. 2010) (quotations omitted). "The first element, existence of a contract, is a legal conclusion that the Court need not accept as true under the Rule 12(b)(6) standard." *Ovitsky v. California Dep't of Fair Employment & Hous*., 2013 WL 12077824, at *1 (C.D. Cal. Jan. 7, 2013), *aff'd*, 594 F. App'x 424 (9th Cir. 2015). Plaintiff's general allegations are identical to those in the Complaint, and are inadequate to establish the terms of the POS Agreement. Plaintiff again did not attach the POS Agreement to the FAC or plead the terms of that agreement in any specific way. Because Plaintiff twice has failed to sufficiently allege the terms of the POS Agreement, and has not addressed these deficiencies in its briefing, the Court **DISMISSES WITH PREJUDICE** Plaintiff's breach of contract claim against Mileo and Scanning.

//
//
//

## G.      Tortious Interference with Contractual Relations

"The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

The Court previously dismissed Plaintiff's claim for tortious interference with contractual relations for failure to plead the identity of any specific third party with whom it contracted that Defendants allegedly interfered.  To state a claim for tortious interference with contractual relations, Plaintiff "must identify the third party or parties with whom they contracted, and the nature and extent of their relationship with that party or parties." *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1115 (C.D. Cal. 2015) (dismissing a counterclaim for intentional interference with contractual relations because the counterclaimants alleged they had "Airline Contracts" but did not identify any third party with whom they had contracted).  Plaintiff now alleges that Defendants interfered with its employment contract with Duran by "attempting to enter into competing agreements" with him.  (FAC ¶ 141.)  However, there are no allegations indicating that Defendants induced Duran to enter into a competing agreement and that Duran did not act of his own volition.  Indeed, Plaintiff alleges that Duran entered into an employment agreement with Plaintiff with the plan to use Plaintiff's information for the benefit of the other Defendants and the Splash store. (*Id.* ¶ 35.)  Simply put, Plaintiff has not plausibly alleged that any Defendant attempted to contract with Duran in order to disrupt his contractual relationship with Plaintiff.  *See, e.g., Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F. Supp. 3d 1141, 1157 (S.D. Cal. 2014) (the plaintiff failed to state a claim for tortious interference with contractual

relationships where the plaintiff did not identify what acts the defendant "purportedly undertook to induce third parties to breach their contracts" with the plaintiff, or why the defendant, "rather than other forces, was the cause of said breach(es)").

Besides Duran, Plaintiff has failed to plead the identity of any of its employees with whom Defendants' allegedly interfered.  (*See* FAC ¶¶ 139–145.)  "This require[s] dismissal of the claim because 'to understand whether [the plaintiff's] performance was disrupted require[s] the district court to determine what contractual rights [it] possess[ed].'"  *UMG Recordings, Inc.*, 117 F. Supp. 3d at 1115 (quoting *United National Maintenance, Inc. v. San Diego Convention Center, Inc.*, 766 F.3d 1002, 1009 (9th Cir. 2014)).  The Court previously instructed Plaintiff to identify such third parties, and the only third party Plaintiff has identified in the FAC is Duran.  Plaintiff does not suggest any new factual allegations, let alone identify any employees relevant to this claim, in its Opposition.  (Opp. at 22–23.)  Plaintiff's failure to provide additional factual allegations indicates that further amendment is futile.  Accordingly, the Court **DISMISSES WITH PREJUDICE** Plaintiff's tortious interference with contractual relations claim.

## H.     Breach of Implied Covenant of Good Faith and Fair Dealing

The FAC alleges facts sufficient to support Plaintiff's claim for breach of the implied covenant of good faith and faith dealing against Duran, as Plaintiff has sufficiently pled a breach of contract claim against Duran.  Defendants argue, however, that Plaintiff's implied covenant claim against Duran is duplicative of its contract claim, and thus should be dismissed.  (Mot. at 24–25.)  Plaintiff argues that this claim is also predicated on "actions [that] are outside the four corners of the parties' respective agreements," the same argument Plaintiff previously made to oppose Defendants' first motion to dismiss.  (Opp. at 18–19; *see* Dkt. 19 at 14.)  Plaintiff alleges that Duran acted in "bad faith" in his execution of the Duran Agreement by "interfering with the

intellectual property rights of Plaintiff and failing to fulfill [his] duties of non-disclosure." (FAC ¶ 112.)  This allegation is duplicative of the facts supporting Plaintiff's breach of contract claim, and Plaintiff has failed to cure this deficiency despite the Court's prior dismissal of the claim on this ground.  *See Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) ("If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.").

Plaintiff also alleges that Duran "poached and solicited" Plaintiff's employees to work at the Splash store, (*id*.), which does not duplicate the facts supporting Plaintiff's breach of contract claim.  However, Duran's alleged "poaching" of Plaintiff's employees relies on the same allegations as Plaintiff's claim for tortious interference with contractual relations.  Plaintiff's failure to identify any specific contractual relationships is fatal to Plaintiff's implied covenant claim.  Plaintiff's conclusory allegation that Duran poached employees, without any supporting facts, does not provide "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

The FAC also fails to allege facts sufficient to support Plaintiff's claim for breach of the implied covenant of good faith and faith dealing against Mileo and Scanning.  "The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract."  *Smith v. City and County of San Francisco*, 225 Cal. App. 3d 38, 49 (1990).  Plaintiff has failed to sufficiently allege a contractual relationship with Mileo and Scanning, and the Court has dismissed the breach of contract claim against Mileo and Scanning with prejudice.  Accordingly, the Court **DISMISSES WITH PREJUDICE** Plaintiff's implied covenant claims against Duran and against Mileo and Scanning.

## I.    Tortious Interference with Prospective Economic Advantage

The elements of an interference with prospective economic advantage claim are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant."  *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1107–08 (9th Cir. 2007).

The Court previously dismissed Plaintiff's claim for tortious interference with prospective economic advantage because Plaintiff failed to identify any specific relationship with which Defendants allegedly interfered.  Again, the FAC merely alleges that Defendants' actions have threatened Plaintiff's "ability to develop franchises" and interfered with its relationships with "numerous customers and vendors."  (FAC ¶¶ 149–51; *see* Compl. ¶¶ 138–39.)  Plaintiff alleges that these alleged prospective franchisees "have not authorized the release of their identifying information," (*id*. ¶ 149), but provides no authority to support why it should be relieved of its burden to identify specific relationships to support its claim in light of this fact, (Opp. at 23–24).  Without pleading an existing relationship with an identifiable customer, vendor, or potential franchisee, Plaintiff provides no "factual basis upon which to determine whether [it] was likely to have actually received the expected benefit."  *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 527 (1996); *see SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, at *15 (N.D. Cal. Dec. 11, 2012) (dismissing the plaintiff's interference with a prospective economic advantage claim for failure to allege "specific facts regarding with which customer relationship Defendants' conduct interfered").  Plaintiff again has failed to identify any prospective economic relationship in the FAC or to suggest one in its Opposition, so further amendment is

futile.  Accordingly, the Court **DISMISSES WITH PREJUDICE** Plaintiff's tortious interference with prospective economic advantage claim.

## J.   Civil Conspiracy

"Under California law, there is no separate and distinct tort cause of action for civil conspiracy."  *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1228 (9th Cir. 1997).  To establish a civil conspiracy, the complaint must allege (1) the formation and operation of a conspiracy, (2), the wrongful act or acts pursuant thereto, and (3) damage to the plaintiff resulting from such act or acts.  *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 511 (1994).  Plaintiff alleges that "Defendants formed a conspiracy to cause harm and injure GREEN CRUSH by, *inter alia*, stealing its valuable intellectual property, interfering with its existing and prospective business relationships and poaching its staff to gain an unfair advantage over its competitor, GREEN CRUSH."  (FAC ¶ 161.)   Defendant argues that this claim should be dismissed as Plaintiff has failed to state a claim for any civil wrong.  (Mot. at 21.)  However, because Plaintiff has stated a claim for breach of contract against Duran, it has pled a civil wrong to support its conspiracy claim.  Additionally, the Court grants Plaintiff leave to amend its claims for trade dress infringement, false designation of origin, unfair competition, common law trademark infringement, accounting, and breach of contract against Duran as to Plaintiff's trade dress and POS System, so those claims could possibly support this claim if amended.  Thus, Defendants' motion is **DENIED** as to Plaintiff's civil conspiracy cause of action.

//
//
//
//

# V.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED IN SUBSTANTIAL PART**.  Plaintiff's causes of action for unfair business practices, breach of contract against Mileo and Scanning, breach of the implied covenant against Duran, breach of the implied covenant against Mileo and Scanning, tortious interference with contractual relations, and tortious interference with prospective economic advantage are **DISMISSED WITH PREJUDICE**.

Plaintiff's causes of action for trade dress infringement, false designation of origin, unfair competition, common law trademark infringement, accounting, misappropriation of trade secrets, and breach of contract against Duran as to Plaintiff's trade dress and POS System are **DISMISSED WITH FOURTEEN DAYS' LEAVE TO AMEND**.

Defendants' motion is **DENIED** as to Plaintiff's causes of action for breach of contract against Duran based on his disclosure of "Confidential Information" as defined by the Duran Agreement and civil conspiracy.


DATED:     May 3, 2018

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE